UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EXPERIENCE, INC. ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> CSO RESEARCH, INC. ) <br> ) <br> Defendant ) <br> ) | Civil Action No. 04-11127-JLT <br> (Magistrate Judge Collings) |

**DEFENDANT CSO RESEARCH, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION TO SHORTEN TIME FOR
<u>DEFENDANT TO RESPOND TO LIMITED DISCOVERY</u>**

Defendant CSO Research, Inc. ("CSO") opposes the Motion of Plaintiff Experience, Inc., to shorten the time for CSO to respond to discovery on the grounds that Experience has not shown, and cannot show, any reason this case warrants extraordinary expedited discovery or relief.

CSO's accused software product has been on the market for *two years*. Experience's alleged copyrighted software has never been marketed by Experience and is not even supported by Experience at this time. Despite its delay and discontinuance of its product, Experience has filed suit (coincidentally on the eve of the industry's most important trade show) and seeks immediate access to the current, marketable product of its direct competitor, CSO, without any suggestion or proposal of reasonable means to protect any trade secret or confidential information of CSO that may be contained in that product. The Federal Rules of Civil Procedure were formulated to preclude such abuse.

Experience should be precluded from taking any discovery until after the parties have conferred pursuant to Fed. R. Civ. P. 26(f) and have addressed issues of timing and confidentiality.

### I. INTRODUCTION AND BACKGROUND

On the eve of the industry's most important trade show, held only once every two years, Experience—without so much as a courtesy phone call or any other notification that it believed infringement was occurring—filed this lawsuit alleging that CSO's Interfase CS software infringed upon the copyright of obsolete software that Experience never marketed and no longer supports. The timing of the suit and the vagueness of the allegations are questionable. So was Experience's next step: Experience sent a mass email to its customers, some of whom are also CSO customers, advising them that CSO was infringing upon Experience's copyright and that Experience was seeking to enjoin continued use of Interfase CS software—all before CSO was even aware that a suit had been filed. This lawsuit appears not to be about intellectual property -- CSO's product is different from and does not infringe Experience's obsolete product -- but about an improper attempt by a large competitor to reclaim market share from a smaller but successful and rapidly growing rival.

### A. Industry history

CSO and Experience are direct competitors in a market niche that provides services to colleges and universities relating to their provision of career placement opportunities for students. It is a field pioneered by CSO's current president, Erik Mulloy. In the late 80's and early 90's, Mr. Mulloy, as president of Academic Software, Inc. ("ASI"), developed a highly successful business plan that emphasized personalized

and attentive service to the specific needs of this market. His successful approach was augmented by software that he personally developed, the 1<sup>st</sup>Place! family of products.

ASI prospered, and in 1999 ASI was sold to the Tribune Company (along with the copyrights to certain 1stPlace! programs). Experience alleges that after a series of corporate transactions, the copyrights at issue were purchased by it in 2001.

Although Experience allegedly purchased copyrights to 1stPlace, it does not currently maintain or support the 1stPlace! software. Rather, it licensees a different suite of products called eRecruiting and eProNet. *See* Declaration of Erik Mulloy at ¶ 7 ("Mulloy Dec."), attached as Exhibit A and incorporated into this opposition for all purposes. Upon information and belief, neither of these products include elements from 1stPlace!. Experience has also adopted a business plan that diverges dramatically from that formerly employed by ASI – a plan that deemphasizes relationships with university career service professionals and emphasizes commercializing the employer aspect of the recruiting process. It is a business plan that is believed to have left many in the college service industry feeling underserved. While Experience may be the unresponsive giant, it is still a giant within the industry.

### B.   Erik Mulloy founds CSO

In 2001, after the expiration of his non-compete agreement, Erik Mulloy reentered the college career services industry with a business plan that reintroduced a personalized service approach functionally similar to the successful ASI model. He founded the firm CSO Research, Inc., hired new software developers to create a new software package for CSO, "Interfase CS," and began marketing to the career services community. Contrary to Experience's allegations, Mr. Mulloy did not copy the prior 1stPlace! software. In fact,

Mr. Mulloy no longer had access to 1<sup>st</sup>Place! programs. The developers hired to code and create the new program had never worked with or had prior access to the 1<sup>st</sup>Place! Software. *See* Mulloy Decl at ¶ 2.

Interfase was built from scratch and designed after an extensive data collection process that identified the needs and preferences of the colleges and universities. No copying took place, either literal or non-literal. The many differences between the software include the fact that they were written in different computer languages, they execute on different operating systems, against completely different database platforms, and they are accessed via completely different methods (Interfase CS via a web browser, 1stPlace! via a desktop operating system). See Mulloy Decl. at ¶ 2.

Being based on the universally desired concept of personalized service, the business plan of CSO has proven to be successful. Through its customer service approach, CSO has chipped away at the market share of Experience. For this reason and others, there is no question but that during the past two years, Experience has been fully aware of CSO and Interfase. Indeed, Erik Mulloy, CSO's founder and president, has participated in panel discussions with both Experience's CEO, Jennifer Floren, and Vice President of Sales and Client Services, Robert Carbonaro, wherein the executives freely discussed their competing products. CSO's software has been demonstrated at numerous tradeshows that Experience employees, including Mr. Carbonaro, also attended. *See* Mulloy Aff. ¶ 6.

Never once during this time period did Experience ever complain, suggest, or even intimate that Interfase was substantially similar to 1stPlace! or that copyright infringement had occurred. Not until the most sensitive time in this industry's calendar

year, on the eve of the NACE conference, did Experience first make known that it was claiming copyright infringement. And then, it was not CSO that was first informed, but rather the customers of CSO and Experience.

### C. **Experience's lawsuit and motion.**

No copyright infringement has occurred. Experience's failure to complain during the prior two years and its present refusal to describe what precise features have been improperly copied are suspicious. In its complaint, Experience is unable to point to a single specific similarity between the two products, and repeatedly relies, instead, on the conclusory and unsupported allegation that "upon information and belief" Interfase CS software is substantially similar to Experience's 1$^{st}$Place! software. In its motion, the best Experience can do is to cite to affidavits containing the most vague hearsay of unidentified Experience employees quoting unidentified customers suggesting some kind of similarity.

Notwithstanding its lack of evidentiary support for its claims, Experience has filed a motion seeking expedited, unfettered access to sensitive and proprietary information from its biggest competitive rival. Experience hopes to find *ex post* justification for its lawsuit. Experience's attempted fishing expedition should be denied because there is no urgency to justify accelerated discovery of the confidential information of a direct competitor.

## II. ARGUMENTS

### A. There is no urgency or emergency to justify accelerated discovery.

To be entitled to any type of ancillary relief that might warrant expedited discovery, Experience must establish that it is being irreparably harmed by the accused activity. *Fritz, DMA, Inc. v. Arthur D. Little, Inc.*, 944 F.Supp. 95, 97 (D. Mass. 1996) (preliminary injunction in copyright case denied where no irreparable harm shown). This Experience cannot do.

In this case, CSO has been overtly marketing and distributing its Interfase CS software to the career services community in open and direct competition with Experience for the last two years. See Mulloy Dec. at ¶ 6. In these two years, Experience never once complained, suggested, or even hinted that it took issue with CSO's creation and sale of its Interfase CS software or otherwise suggested that the sale of the product was irreparably harming the rights under copyright law that Experience claims. Accordingly, Experience has no emergency. *See id.* (holding that where plaintiff delayed two years in commencement of copyright action, irreparable harm was not shown).

Moreover, Experience has already totally withdrawn the product in which it claims rights from the marketplace and does not market or support that product, at all! The evidence will show that CSO's product is different from and does not infringe Experience's obsolete product.  See Mulloy Dec. at ¶ 2. However, even assuming, counterfactually, that infringement could be shown, infringement of an obsolete product may give rise to money damages, but not irreparable harm.

Accordingly, there is no justification for accelerating discovery in this matter, as Experience will not suffer irreparable harm by maintaining the status quo that the two

competitors have peacefully enjoyed for the last two years. Experience's motion should be denied.

### B. Experience's "file first, investigate later" approach is improper

The circumstances surrounding the timing of this lawsuit and motion, the vagueness of the alleged infringement, and the complete failure of Experience to state in advance of access to the product what protectable features of its own software are being infringed by CSO all suggest that Experience's request for access to CSO's proprietary information is made, in part, as an attempt by Experience to find, after-the-fact, support for claims for which it is uncertain as to whether it had legitimate grounds for bringing in the first place. This improper approach to discovery and to filing actions in the federal courts should be turned away. This circuit has repeatedly rejected the fishing expedition model of discovery. *See e.g.*, *Eastern Food Serv., Inc. v. Pontifical Catholic Univ. Serv. Ass'n, Inc.*, 357 F.3d 1 (1st Cir. 2004) (rejecting discovery request and noting case authority "that it is not enough merely to allege a violation in conclusory terms . . . and that discovery is not for fishing expeditions.") Indeed, under similar circumstances, the federal courts have imposed sanctions for precisely this "file first, investigate later" approach. *See Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (Rule 11 "requires that the inquiry be undertaken before the suit is filed, not after.").[1] Experience's tactics are improper and provide an additional basis for this Court to reject Experience's motion for expedited discovery.

---

[1] *See also View Eng., Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 985-86 (Fed. Cir. 2000) (affirming Rule 11 sanctions where patent infringement case was brought on information and belief and infringing device was never examined pre-suit); *NLFC, Inc. v. Devcom Mid-America, Inc.,* 916 F.Supp. 751, 757 (N.D.Ill. 1996) finding action frivolous where party failed to substantiate the hearsay beliefs of third parties prior to filing suit).

### C. Experience is trying to ignore the procedural prerequisites for filing discovery.

Local Rule 26.2(A) states that "before a party may initiate discovery, that party must provide to other parties disclosure of the information and materials called for by Fed. R. Civ. P. 26(a)(1)." This Rule seeks to protect parties from invasive discovery served by a party who is unwilling to provide to opposing parties the minimal but important information required under Rule 26, information that enables the parties to assess the potential validity of claims asserted. While this requirement may be practically met when seeking ancillary relief through a verified complaint, Experience's pleadings fall far short of such a basic requirement or the spirit of the rule. For example, Experience's refusal to identify the third party individuals who supposedly have reported the similarity in the software while demanding access to its direct competitor's confidential software product could not be more inconsistent with this local rule. For this additional reason, this discovery must be rejected.

### D. If this information is to be turned over, appropriate safeguards are necessary to protect confidential information and preclude the use of discovery as a fishing expedition

If the Court is inclined to permit expedited discovery of its software, CSO requests that any and all discovery of its software and of the development of its software be limited in scope and distribution, pursuant to Rule 26(c), in a manner that effectively precludes the disclosure of the confidential information and trade secrets of CSO, directly or indirectly, to its direct competitor, Experience. The discovery should also be under terms that preclude use of the discovery as a fishing expedition.

In this regard, Experience has pleaded only five copyright registrations. The chances of copyright infringement of these works by any product that is marketable today

is highly remote. (Indeed, Experience itself has taken this outdated product off the market.) To provide any access to the CSO software - - even access limited only to outside counsel for Experience - - would effectively permit the fishing expedition proscribed under the case law.

The Interfase CS software is highly sensitive, confidential and proprietary information and is protected by the trade secret privilege. CSO has invested substantial resources in the product and has carefully safeguarded its property from public disclosure. *See* Mulloy Aff. ¶¶ 3-5. Experience should not be given access to the trade secret or confidential information of a direct competitor simply because it filed suit. Rather, when discovery is pursued consistent with the federal and local rules later in this litigation, any and all access to such confidential information should be limited, pursuant to Rule 26(c), to outside counsel and independent experts only. Additionally, if discovery were to be permitted at this time and under the appropriate protective order safeguarding CSO's trade secrets, CSO must also be provided, under similar terms, access to the software that Experience claims is being infringed. CSO and Erik Mulloy do not have access to 1stPlace!, and it would be fundamentally unfair to order discovery that allows only one side to compare the products for similarities.

CSO respectfully submits that these issues demonstrate that discovery of such confidential information should be conducted in the ordinary course of the litigation in order to enable the parties to more fully consider and brief the Court regarding all of the associated concerns. The lack of irreparable harm discussed above reinforces this position. If the Court is inclined to permit expedited discovery, however, suitable protection must be afforded, pursuant to Rule 26(c), to preclude "fishing" and to protect

the trade secret and confidential information of a potentially innocent competitor - - CSO, and equivalent access must be afforded to Experience's relevant product.

## CONCLUSION

For the foregoing reasons, CSO requests that the Court DENY Experience's motion in its entirety. If the Court is inclined to permit expedited discovery, CSO requests that this Court make such discovery reciprocal and enter a protective order, pursuant to Rule 26(c), limiting disclosure of the CSO software only to Experience's outside counsel and the independent experts employed by such outside counsel.

## REQUEST FOR ORAL ARGUMENT

CSO respectfully requests a hearing so that it can more fully set out the dynamics of this dispute, explain the nature of the software at issue, and otherwise aid the Court in this matter.

Dated: June 18, 2004                    Respectfully submitted,


                                        By:    /s/ Erik Paul Belt

                                               Beverly G. Reeves
                                               Texas State Bar No. 16716500
                                               Paul Schlaud,
                                               Texas State Bar No.
                                               REEVES & BRIGHTWELL LLP
                                               8911 N. Capital of Texas Hwy.
                                               Westech 360, Suite 3210
                                               Austin, TX  78759-7249
                                               (512) 334-4500 (Main)
                                               (512) 334-4492 (Facsimile)

                                               Robert L. Kann, BBO # 258025
                                               Erik Paul Belt, BBO # 558620
                                               Bromberg & Sunstein LLP
                                               125 Summer Street
                                               Boston, Massachusetts 02110-1618
                                               (617) 443-9292
                                               (617) 443-0004 (facsimile)
                                               ebelt@bromsun.com

                                               **ATTORNEYS FOR
                                               DEFENDANT CSO RESEARCH,
                                               INC.**

02901/00501  317999.1